# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT OWENSBORO

**MICHAEL CHAD BOLDRY**                                  **PLAINTIFF**

**v.**                                            **CIVIL ACTION NO. 4:16-CV-P88-JHM**

**COLONEL LESLIE GIBSON** *et al.*                            **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon motions for summary judgment filed by Defendant Colonel Leslie Gibson (DN 23) and Defendants Southern Health Partners, Inc., Dr. Henry Davis, and Nurse Kendra Robinson (the "SHP Defendants") (DN 26). Fully briefed, this matter is ripe for adjudication. For the following reasons, Defendants' motions for summary judgment (DNs 23 & 26) will be granted.

## I. PROCEDURAL HISTORY

*Pro se* Plaintiff Michael Chad Boldry initiated this 42 U.S.C. § 1983 prisoner civil rights action by filing a complaint signed under penalty of perjury (DN 1) while he was incarcerated at the Henderson County Detention Center (HCDC). Plaintiff also filed an amended complaint that was signed under penalty of perjury (DN 10).[1,2] The Court conducted an initial screening of Plaintiff's complaint and amended complaints pursuant to 28 U.S.C. § 1915A. On review, the Court allowed official and individual-capacity claims for deliberate indifference to a serious medical need and state-law claims of medical malpractice and the intentional infliction of emotional distress to proceed against Dr. Davis and Nurse Robinson, who were employees of

---

[1] This document was actually filed as a "Motion for Leave to File an Amended Complaint," but the Court granted this motion and then construed the filing as an amended complaint (DN 13). The Court will henceforth refer to this document as the amended complaint.

[2] Plaintiff also filed three other documents (DNs 9, 11, & 12) which the Court construed as motions for leave to file an amended complaint and granted. However, these "amended complaints" were not signed under penalty of perjury.

Southern Health Partners, Inc., (SHP), the entity contracted by HCDC to provide medical care to inmates while Plaintiff was incarcerated there. The Court also allowed a constitutional claim of deliberate indifference and a state-law claim for the intentional infliction of emotional distress to proceed against Colonel Gibson, an HCDC official, in her individual capacity.

After Defendants filed their instant motions for summary judgment, the Court entered an Order directing Plaintiff to file a response. This Order provided Plaintiff guidance in responding to a motion for summary judgment under Rule 56 of the Federal Rules of Procedure, including pointing him to the requirement that he must "support his facts with affidavits (sworn witness statements) and/or other documents contradicting the material facts asserted by Defendants" in their motions (DN 37). The Court also attached a copy of Rule 56 to this Order. Despite this guidance, Plaintiff filed unsworn responses to both motions for summary judgment with no exhibits attached (DNs 38 & 39). Defendants then filed replies. Plaintiff thereafter filed unsworn "amended responses" and an unsworn sur-reply, again with no exhibits attached (DNs 43, 44, & 45).

## II. FACTS[3]

Plaintiff was incarcerated at HCDC from May 8, 2016, until January 12, 2017. When Plaintiff completed a medical questionnaire upon his arrival at HCDC, he indicated that he had been diagnosed with emphysema but that he was not currently taking any prescription medications "that needed to be continued" while he was incarcerated at HCDC (DN 26-2, Ex. 1-A, Standard Medical Questions). Shortly after he arrived at HCDC, he was placed in a medical

---

[3] If not otherwise noted, these facts are taken from Dr. Davis's affidavit (DN 26-2) and Plaintiff's medical records (all other exhibits attached to DN 26) which were filed in support of the SHP Defendants' motion for summary judgment.

2

cell for detoxification and medical treatment as needed. Plaintiff remained in the medical unit during his entire incarceration at HCDC.

On June 2, 2016, Plaintiff completed a sick-call request to be seen by a doctor for his emphysema and chronic obstructive pulmonary disease (COPD). He also requested an inhaler. On June 6, 2016, Plaintiff was seen by a nurse who examined him and noted that his respirations were even and unlabored and that his oxygen saturation was 98%. The nurse advised Plaintiff that a doctor would review his records and the need for a consult. Dr. Davis reviewed Plaintiff's records that same day and determined Plaintiff had no acute changes requiring treatment at that time. The next morning, a SHP nurse checked Plaintiff's oxygen levels again to ensure that they were normal, and they were.

On June 11, 2016, Plaintiff again complained about his COPD and reported that it mostly bothered him at bedtime. Even though Plaintiff's oxygen level was normal and he did not appear to have shortness of breath, the nurse noted that she would obtain orders for Plaintiff to have Albuterol nebulizer treatments as needed. Dr. Davis entered an order for this breathing treatment later that day, and Plaintiff received the treatment that night.

On June 18, 2016, Plaintiff again requested to see medical staff due to his breathing issues. The nurse that examined him noted that his oxygen levels were 98% and that he was not showing any acute signs of distress, although he had diminished breath sounds and a slight wheeze. The nurse provided another Albuterol breathing treatment, after which Plaintiff's oxygen levels were 99%.

Plaintiff requested another breathing treatment on June 20, 2016, but upon examination the nurse found that his lungs were clear, his oxygen levels were 97%, and he had no diminished lung sounds or any symptoms of distress. The nurse explained to Plaintiff that he did not need a breathing treatment and suggested that he try some deep breathing exercises. The following day

Dr. Davis gave orders for Plaintiff to receive Mucinex 600 mg twice a day and the use of his inhaler, "2 puffs twice a day." One week later, Plaintiff completed another sick-call slip, stating that he was not receiving his mucus pills.

On June 29, 2016, Plaintiff underwent a standard history and physical examination. During this examination, Plaintiff reported to the nurse that he had previously been hospitalized for "COPD Emphazema" and that he was currently taking Prilosec and using an inhaler (DN 26-4, Admission Data/History and Physical Form).

On July 3, 2016, Plaintiff completed another sick-call slip, this time indicating that he would like to be moved out of his medical cell. That same day, Plaintiff received another Albuterol breathing treatment. SHP progress notes indicate that on July 5, 2016, Plaintiff still wanted to be moved out of his medical cell, but that medical staff would not move him as long as he claimed to have ongoing respiratory issues for which he was receiving treatment.

On August 2, 2016, Dr. Davis re-evaluated Plaintiff due to his ongoing complaints of a bedtime cough, COPD, and shortness of breath. Dr. Davis gave Plaintiff Mucinex and his inhaler (which Plaintiff declined). Dr. Davis noted that Plaintiff was still requesting breathing treatments but did not have any wheezing present. Dr. Davis also noted that Plaintiff was to continue receiving Prilosec for gastroesophageal reflux disease (GERD), which is more commonly known as acid reflux.

On August 22, 2016, Plaintiff again refused his inhaler. In the following weeks, Plaintiff continued to request to be moved out of his medical cell stating he did not need any continuing treatment.

On October 9, 2016, Plaintiff told a SHP nurse that he wanted to discontinue the use of his inhaler and leave his medical cell because he had been classified to work and he did not need his inhaler. Plaintiff also told the SHP nurse that he was doing 1,000 pushups per day.

On October 28, 2016, Plaintiff complained of shortness of breath. Dr. Davis noted that his x-ray showed "bullous emphysema" and determined that Plaintiff needed to remain on his prescription medications and that he was not a candidate for the work program.

On November 8, 2016, Plaintiff completed another sick-call form on which he stated: "Just found out I don't even have COPD" (DN 26-7, Ex. 1-E). The following day, Plaintiff completed a sick call slip which stated: "Dr. Mucoria from Owensboro Hospital (pulmonologist) . . . has records showing I don't have emphysema (COPD) and want medical to call and he will fax information showing I don't have COPD" (DN 26-8, Ex. 1-F).

On November 14, 16, and 17, 2016, Plaintiff filled out three more sick-call slips, again insisting that he did not have COPD and that he should be released from his medical cell. On November 21, 2016, Dr. Davis reviewed Plaintiff's records and determined that Plaintiff should not be released from his medical cell because Plaintiff had a documented history of COPD and was receiving treatment which he had requested for such.

### III. LEGAL STANDARD

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts

that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact which requires the denial of a motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). "The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The evidence of the non-moving party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

However, the fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *7 (6th Cir. May 5, 2010) (citations omitted). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion"). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

# IV. ANALYSIS

Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

The Eighth Amendment protects convicted prisoners from the "unnecessary and wanton infliction of pain." U.S. Const. amend. VIII. An Eighth Amendment claim requires a plaintiff to prove two distinct components - one objective and one subjective. First, the alleged deprivation must be, objectively, "sufficiently serious," *i.e.*, the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1970) (citations and internal quotation marks omitted). Second, the official must have been "deliberately indifferent" to the inmate's health or safety. *Id.*

To satisfy the objective component of an Eighth Amendment deliberate indifference claim, Plaintiff must show the existence of a sufficiently serious medical need, meaning that he is "incarcerated under conditions posing a substantial risk of serious harm." *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 834).

The subjective component of the Eighth Amendment standard is met "where a plaintiff demonstrates that prison officials acted with 'deliberate indifference' to a serious medical need," which "is the equivalent of 'recklessly disregarding that risk.'" *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 836). In other words, "[s]atisfying the objective component ensures that the alleged deprivation is sufficiently severe, while

7

satisfying the subjective component 'ensures that the defendant prison official acted with a sufficiently culpable state of mind.'" *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)). Under the subjective prong, a plaintiff must show: (1) "the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner"; (2) the official "did in fact draw the inference"; and (3) the official "then disregarded that risk." *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014).

In addition, in *Alspaugh v. McConnell*, the Sixth Circuit held as follows:

> "[W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id*. However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id*.

643 F.3d 162, 169 (6th Cir. 2011).

The Sixth Circuit has also held that "[a] plaintiff alleging deliberate indifference must show more than negligence or misdiagnosis of an ailment." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). A plaintiff must also show that his claim involves more than a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment. *Westlake v. Lucas*, 537 F.2d at 860, n.5.

### A. The SHP Defendants' Motion for Summary Judgment

#### 1. Individual-Capacity Claims

##### a. Dr. Davis

In his amended complaint, which was signed under penalty of perjury, Plaintiff states that he has emphysema, COPD, and spots on his lungs which require certain "breathing treatments." (DN 10, p. 7). In his unsworn response to the SHP Defendants' motion for summary judgment,

Plaintiff claims that Dr. Davis violated his rights by "telling medical on 6/6/16 to give Plaintiff breathing treatments whenever requested but then telling medical to never give him breathing treatments again a week later without even seeing Plaintiff." (DN 39, Pl.'s Resp.). Plaintiff also claims that Dr. Davis violated his rights by "waiting two months" to physically examine Plaintiff. (*Id.*). Finally, Plaintiff claims that, as a result of Dr. Davis's actions, he "suffered every night and almost died from not being able to breathe." (*Id.*).

Despite Defendants' arguments to the contrary, Plaintiff's breathing conditions may constitute sufficiently serious medical conditions to satisfy the objective component of a deliberate indifference claim under the Eighth Amendment. However, the undisputed facts show that Dr. Davis was not deliberately indifferent to these medical conditions. The Court first turns to Plaintiff's claim that Dr. Davis showed deliberate indifference by failing to personally examine Plaintiff for "two months" despite his serious medical conditions. The affidavit submitted by Dr. Davis does show that Plaintiff requested to be seen by a doctor on June 2, 2016, and that he was not personally examined by Dr. Davis until August 2, 2016. However, Dr. Davis's affidavit establishes that, during this period, not only was Plaintiff regularly seen by a nurse for his breathing conditions, but that Dr. Davis himself continually reviewed Plaintiff's medical reports, prescribed Albuterol breathing treatments for Plaintiff on June 11, 2016, and ordered that Plaintiff receive "Mucinex 600 mg twice a day and use of his Beclovent Inhaler, 2 puffs twice a day" on June 21, 2016 (DN 26-2, Davis Aff., ¶¶ 11-12, 15 ). Then, on August 2, 2016, when Dr. Davis physically examined Plaintiff for his "ongoing complaints of bedtime cough and COPD," Dr. Davis gave Plaintiff "Mucinex and his inhaler (which Plaintiff declined)" and noted that Plaintiff was to continue receiving Prilosec for GERD.

Moreover, although Plaintiff argues, without any evidentiary support, that Dr. Davis ordered him to receive breathing treatments "whenever requested" and then arbitrarily withdrew

9

that order one week later, Dr. Davis's affidavit establishes that on June 11, 2016, he ordered that Plaintiff receive "Albuterol nebulizer treatments *as needed*" (DN 26-2, Davis Aff., ¶¶ 11-12). This affidavit also shows that Plaintiff received Albuterol treatments on June 11, 18, and July 3, 2016, when the nurse seeing Plaintiff determined that such treatment was appropriate (DN 26-2, Davis Aff., ¶¶ 12-13, & 21). Shortly after this, Plaintiff began requesting to be moved out of his medical cell because he believed he no longer needed medical treatment for his various conditions. And, on November 1, 2016, Plaintiff submitted a sick-call request form stating that an outside pulmonologist had determined that he had "no COPD Emphazema" and requested "medical" to have his records from this pulmonologist faxed to them (DN 26-2, Ex. 1-G, p. 2).

Plaintiff's complaints against Dr. Davis essentially rest on the fact that Plaintiff disagreed with how Dr. Davis chose to treat his breathing conditions. However, as stated above, a plaintiff must show that his Eighth Amendment claim involves more than a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment. *Westlake v. Lucas*, 537 F.2d at 860, n.5. This, Plaintiff has not done. Indeed, based upon the undisputed evidence, the Court concludes that no reasonable jury could conclude that Dr. Davis knew of and recklessly disregarded Plaintiff's breathing conditions.

Therefore, the Court will grant summary judgment in favor of Dr. Davis on the Eighth Amendment claim the Court allowed to proceed against him in his individual capacity.

### b. Nurse Robinson

In his amended complaint, Plaintiff indicates that Nurse Robinson violated his rights when, after he had received Prilosec for five months, Nurse Robinson discontinued it "stating that it was SHP's policy not to supply acid reflux medicine indefinitely." (DN 10, Amended Compl., p. 9). Plaintiff writes that after Nurse Robinson discontinued Prilosec, "his reflux flared up and became very painful." (*Id.*, p. 8).

A review of the evidence presented leads the Court to conclude that Nurse Robinson is entitled to summary judgment on this matter. First, Plaintiff has failed to produce evidence in response to the SHP Defendants' motion for summary judgment upon which a reasonable jury could conclude that he faced a risk of substantial harm unless he received Prilosec. As the Tenth Circuit has observed, "GERD—also known as acid reflux—is a common problem and in many instances is not a serious condition warranting Eighth Amendment scrutiny." *Tennyson v. Raemisch*, 638 F. App'x 685, 689 (10th Cir. 2015). Indeed, various courts have concluded that acid reflux does not constitute an objectively serious medical condition. *Watson-El v. Wilson*, No. 08-CV-14727, 2010 U.S. Dist. LEXIS, at *34 (N.D. Ill. Sept. 15, 2010) ("The court finds as a matter of law that the plaintiff's acid reflex did not rise to the level of a serious medical need for purposes of Eighth Amendment analysis."); *Fox v. Rodgers*, No. 08-CV-14727, 2010 U.S. Dist. LEXIS 63094, at *7 (E.D. Mich. June 8, 2010) ("Plaintiff falls short of satisfying the objective component. He did not present any authority for the proposition that his acid reflux disease presented a serious medical need."), *report and recommendation adopted*, 2010 U.S. Dist. LEXIS 63112 (E.D. Mich. June 25, 2010); *Ross v. McGinnis*, No.00-cv-0275E, 2004 U.S. Dist. LEXIS 9367, at *26 (W.D.N.Y. Mar. 29, 2004) (diagnosis of chronic dyspepsia, a small hiatal hernia, and mild reflux esophagitis does not constitute a serious medical need). Other courts have found that acid reflux may constitute a serious medical need where it is accompanied by more than vague complaints of pain, such as five days of vomiting acid while sleeping, *Bell v. Jendell*, 980 F. Supp. 2d 555, 560 (S.D.N.Y. 2013), or interference with the ability to eat, *Lane v. Corizon Healthcare*, No. 3:13-CV-519 JD, 2013 U.S. Dist. LEXIS 136359 (N.D. Ind. Sept. 23, 2013).

Moreover, although neither party disputes that Nurse Robinson discontinued his medication, there is nothing in the record to show that she "subjectively perceived facts from

11

which to infer" that this discontinuation would cause "substantial risk" to Plaintiff. *Rouster,* 749 F.3d at 446 (6th Cir. 2014). Indeed, Plaintiff does not indicate that he ever informed Nurse Robinson of his pain or any other symptoms that occurred as a result of the discontinuation of the medication. Thus, the Court also concludes that there is not sufficient evidence upon which a reasonable jury could find that Nurse Robinson was deliberately indifferent to Plaintiff's GERD diagnosis. *See, e.g., Tennyson*, 638 F. App'x at 689-90 (holding that physician who had previously prescribed medication for GERD but discontinued it did not show deliberate indifference because there was no evidence that the plaintiff ever told the physician about "the particular severity of his [resulting] pain" or any other resulting symptoms).

As such, the Court will grant summary judgment in favor of Nurse Robinson on the Eighth Amendment claim that the Court allowed to proceed against her in her individual capacity.

### 2. Official-Capacity Claims

The Court next turns to the official-capacity claims it allowed to proceed against Dr. Davis and Nurse Robinson based upon Plaintiff's statement in his amended complaint that Nurse Robinson told him it that was "SHP's policy not to supply acid reflux medicine indefinitely." (DN 10, Amended Compl., p. 9). Plaintiff's official-capacity claims against Dr. Davis and Nurse Robinson are deemed claims against their employer, SHP. *See, e.g.*, *Smith v. Davis*, 5:17-CV-P187-GNS, 2018 U.S. Dist. LEXIS 41882, at *16 (W.D. Ky. Mar. 14, 2018) (finding official-capacity claim against a Correct Care Solutions (CCS) employee to be against CCS itself); *Prather v. Corr. Care Solutions*, No. 3:16-CV-P60-JHM, 2016 U.S. Dist. LEXIS 65363, at *12 (W.D. Ky. May 18, 2016) (same).

The Sixth Circuit has held that the same analysis that applies to § 1983 claims brought against municipalities applies to private corporations contracted to provide medical services to

12

inmates. *See, e.g.*, *Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012) (recognizing that a "*Monell*[4] custom or policy claim" can be brought under § 1983 against a private corporation that provides medical care to inmates); *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (applying *Monell*'s municipal liability standard to the private corporation that had been contracted to operate a jail) (citing *Street v. Corr. Corp. of Am.*, 102 F. 3d. 810, 814 (6th Cir. 1996)). Thus, to establish § 1983 liability against a corporation like SHP, a plaintiff must show that the defendant implemented a policy that caused the deprivation of the plaintiff's Eighth Amendment rights. *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001).

Significantly, the Sixth Circuit has specifically held that "[t]here can be no *Monell* municipal liability under §1983 unless there is an underlying unconstitutional act." *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007) (specifically holding that because the jury found no constitutional violation by the individual defendants, "the county could not have been found liable. . . for an allegedly unconstitutional custom or policy") (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)); *see also S.L. v. Pierce, Twp. Bd. of. Trs.*, 771 F.3d 956, 963 (6th Cir. 2014) (holding that "an attempt to impose municipal liability under § 1983 requires an underlying violation of the § 1983 claimant's rights"); *Ewolski v. City of Brunswick*, 287 F.3d 492, 516 (6th Cir. 2002) ("Where, as here, a municipality's liability is alleged on the basis of the unconstitutional actions of its employees, it is necessary to show that the employees inflicted a constitutional harm."); *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983.").

---

[4] In *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658 (1979), the Supreme Court set forth the standard for municipal liability under § 1983.

In light of the above jurisprudence, SHP is entitled to summary judgment in its favor because the Court has already determined that no reasonable jury could conclude that either individual SHP Defendant violated Plaintiff's Eighth Amendment rights.

### 3. Plaintiff's Outstanding Arguments

In his unsworn "amended response" to the SHP Defendants' motion for summary judgment, Plaintiff makes some additional arguments which the Court deems it prudent to address. First, Plaintiff argues that his signature was forged on a form, allegedly signed on December 16, 2016, which states he is refusing all medical treatment and releasing SHP from liability relating to same. (DN 26-10, Ex. 1-H, Refusal of Medical Treatment and Release of Responsibility Form). The Court has reviewed this form, and it appears to the Court that someone actually signed "Refusal to Sign" on the line provided for the inmate's signature. However, the Court finds that this disputed fact is not material because, even if Plaintiff refused to sign this form, no reasonable jury could conclude, based upon the undisputed evidence presented to the Court, that either individual SHP Defendant was deliberately indifferent to Plaintiff's serious medical needs.

Plaintiff also argues in this amended response that the medical records attached to the SHP Defendants' motion for summary judgment have been altered because they do not show the provider's response to his sick-call slips. However, even if this true, Plaintiff does not explain how the supposedly missing information from any of the "altered" medical slips affects his claims in any way. He also fails to attach any "complete," "unaltered" sick-call slips to his response so that the Court can make such a determination of its own accord.

Finally, Plaintiff argues in this amended response that both another inmate and his mother will testify at trial regarding the lack of medical treatment Plaintiff received at HCDC and the suffering this caused Plaintiff. However, as noted above, once a defendant has moved for

summary judgment under Rule 56 and presented evidence in support of its motion, it is Plaintiff's burden to present evidence at this stage, in response to the motion for summary judgment, that "show[s] specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex*, 477 U.S. at 324).

For these reasons, the Court concludes that these arguments are unmeritorious and do not change the Court's determination that the SHP Defendants have met their burden in showing that they are entitled to judgment in their favor.

### B. Colonel Gibson's Motion for Summary Judgment

The Court next to turns to Col. Gibson's motion for summary judgment. In his amended complaint, Plaintiff states that Col. Gibson turned a "blind eye" to the SHP Defendants alleged violations of his rights and "failed to protect [P]laintiff from wanton infliction of pain . . . ." (DN 10, Amended Compl., p. 10). In the affidavit submitted with her motion for summary judgment, Col. Gibson avers that she "responded to each of [Plaintiff]'s medical complaints by having him seen by [SHP] medical staff." (DN 23-2, Gibson Aff., ¶ 8). She also notes that Plaintiff was "housed in the medical unit" during his entire incarceration at HCDC and was seen by SHP medical staff on 25 occasions during his months-long stay there. (DN 23-2, Gibson Aff., ¶ 5).

The Sixth Circuit has held that a non-medically trained officer does not act with deliberate indifference to an inmate's medical needs when she "reasonably defer[s] to the medical professionals' opinions." *McGaw v. Sevier Cty.*, 715 F. App'x 495, 498 (6th Cir. 2017) (quoting *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006)). Several other courts have also recognized that jail officials are entitled to rely on the judgment of medical professionals regarding the appropriate course of medical treatment. *McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013); *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011); *see also Fantone v.*

15

*Herbik*, 528 F. App'x 123, 128 (3d Cir. 2013); *Baker v Cty. of Missaukee*, No. 1:09-cv-1059, 2016 U.S. Dist. LEXIS 44565, at *36 (W.D. Mich. Mar. 3, 2016). Indeed, as the Third Circuit has reasoned, where "a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

Here, the undisputed evidence establishes that Col. Gibson referred Plaintiff to the SHP medical staff for his medical issues and that Plaintiff regularly received treatment by the SHP medical staff. Moreover, despite Plaintiff's broad claims to the contrary in his amended complaint, he has presented no specific evidence that Col. Gibson had reason to know or believe that the treatment he was receiving from these medical professionals was inadequate. *See, e.g.*, *Stine v. State Farm Fire & Cas. Co.*, 428 F. App'x 549, 550 (6th Cir. 2011) ("[A] conclusory affidavit bypasses the specific-facts requirement of Federal Rule of Civil Procedure 56 necessary to forestalling summary judgment."). Thus, the Court concludes that no reasonable jury could find that Col. Gibson acted with deliberate indifference to Plaintiff's serious medical needs.

For these reasons, the Court will grant summary judgment in favor of Col. Gibson as to Plaintiff's Eighth Amendment claim against her.

### C. State-Law Claims

The Court's grant of summary judgment to all Defendants on Plaintiff's constitutional claims leaves before the Court only Plaintiff's state-law claims against each Defendant. Where, as here, a district court has dismissed all of the claims over which it had original jurisdiction, the court may decline to exercise supplemental jurisdiction over the remaining claims. *See* 28 U.S.C. § 1367(c)(3). The decision whether to exercise supplemental jurisdiction over a claim is purely discretionary and depends on judicial economy, convenience, fairness, and comity. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *Musson Theatrical, Inc. v. Fed.*

*Express* Corp., 89 F.3d 1244, 1254 (6th Cir. 1996). As a rule of thumb, however, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . ." *Musson Theatrical, Inc.*, 89 F.3d at 1254-55. Indeed, as the Sixth Circuit has observed: "[T]he Supreme Court's general comity-related principle [is] that residual supplemental jurisdiction be exercised with hesitation, to avoid needless decisions of state law." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 522 (6th Cir. 2007) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). In light of these guiding principles, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims and will therefore deny without prejudice Defendants' motion for summary judgment on these claims.

## V. CONCLUSION

For the foregoing reasons**, IT IS HEREBY ORDERED** that the motions for summary judgment filed by Colonel Gibson (DN 23) and the SHP Defendants (DN 26) are **GRANTED**. Plaintiff's remaining state-law claims will be **dismissed without prejudice**.

Date:  March 28, 2019

*Joseph H. McKinley (signature)*

Joseph H. McKinley Jr., District Judge
United States District Court

cc:    Plaintiff, *pro se*
       Counsel of Record
4414.011